J-S64029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  ADOPTION OF K.S., A MINOR CHILD | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  N.S., NATURAL MOTHER | No. 1016 WDA 2014 |

Appeal from the Order Entered May 29, 2014
In the Court of Common Pleas of Fayette County
Orphans' Court at No(s): 9 ADOPT 2014

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED OCTOBER 22, 2014**

N.S. ("Mother") appeals from the order involuntarily terminating her parental rights to K.S. (born in January of 2005) ("Child"), pursuant to 23 Pa.C.S. § 2511 (a)(1) and (b).  We affirm.

This appeal arises from a petition requesting the court to order the involuntary termination of Mother's parental rights to Child.  The petition was filed by N.J.M. and her husband, J.N.L. ("Paternal Aunt and Uncle"), with whom Child has lived since November 2, 2011.  Parental Aunt and Uncle seek to adopt Child.  A hearing was held on May 27, 2014.  The orphans' court's opinion and order, dated May 27, 2014, provides an extensive factual and procedural history of this case.  In that document, the court states:

> 1. [A.M.] is the biological father of [Child], and he has executed a consent to adoption, wherein he consents that the minor child will be adopted by his sister, [N.J.M.], and her husband, [J.N.L.].
>
> 2. [Child] is presently nine years of age, and she is the oldest child of [Mother's] five children.  In addition to [Child], the minor

children of [Mother] are [L.S.], born June [of] 2007; [P.S.], born August [of] 2008; [L.L.], born December [of] 2010; and [W.S.], born December [of] 2013.

3. [Mother] has custody of her youngest child, [W.S.], and her other three minor children are in the custody of their grandmother.

4. Fayette County Children and Youth Services (hereinafter "CYS") has had involvement with [Mother] and her children since December 14, 2010.

5. CYS accepted a case for service, which involved [Child] and her three siblings, on February 16, 2011.

6. On October 3, 2011, [Child] was removed from the care of [Mother]….

7. Although services were offered to [Mother] through CYS in 2011, [Mother] failed to comply with a permanency plan for reunification with her minor children, and on April 24, 2012, the Honorable Nancy D. Vernon authorized CYS to terminate its case involving [Child], and Judge Vernon's Order further awarded legal and physical custody of [Child] to [Paternal Aunt].

8. [Child] has been in the custody of [Paternal Aunt and Uncle] since November 2, 2011. At the time [Paternal Aunt and Uncle] assumed custody of [Child], she had significant medical (missed immunizations and head lice), dental (six rotted teeth down to the gum line, with infection) and emotional (fear of being left alone and alleged sexual abuse) challenges. [Paternal Aunt and Uncle] took immediate action to correct the medical and dental issues and [Child's] counseling sessions are ongoing.

9. [Mother] has struggled with drug addiction since 2009; and she served time in jail from August 1, 2012, through March 5, 2013, after entering a guilty plea to felony charges.

10. The last contact between [Mother] and [Child] was July, 2012.

11. Upon her release from jail in 2013, [Mother] contacted [Paternal Aunt] in an attempt to establish visits with [Child]. [Paternal Aunt] informed [Mother] that visits would have to be

facilitated through the Crime Victims Center in Uniontown, Fayette County, Pennsylvania.

12. The testimony is undisputed that after June, 2013, there were no attempts by [Mother] to foster any relationship whatsoever with [Child]. Specifically, [Mother] did not call to inquire about her daughter, she did not send cards or gifts, nor did she consult with any legal advisor or agency concerning [Child].

13. Attorney Marianne Miele, guardian *ad litem* for [Child], reported to the Court that [Child] is doing well in her home with the [Paternal Aunt and Uncle]. [Child] talks excitedly about her family and the gatherings she enjoys with her family. [Child's] developmental, physical, and emotional needs are being met by the [Paternal Aunt and Uncle], and an adoption will be in the best interest of the child.

14. [Paternal Aunt and Uncle] confirmed their present intention to adopt [Child].

Orphans' Court Opinion (OCO), 5/27/14, at 1-4. Based upon these facts, the court ordered the termination of Mother's parental rights to Child.

Mother filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). She raises the following issue:

Did the [t]rial [c]ourt err by abusing its discretion in terminating the natural parent's rights as petitioner failed to sustain its burden of proof by clear and convincing evidence to show that the parent evidenced a settled purpose of relinquishing a settled claim to the child or refused to perform parental duties?

Mother's brief at 6.

Our standard of review regarding orders terminating parental rights is as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the

- 3 -

trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid.

*Id.* at 806. We have previously stated:

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003).

The termination of parental rights is controlled by 23 Pa.C.S. § 2511. Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under section 2511(a). *See In the Interest of B.C.*, 36 A.3d 601 (Pa. Super. 2012). If the trial

court determines that the parent's conduct warrants termination under section 2511(a), it must then engage in an analysis of the best interests of the child under section 2511(b). **See id.** Here, the court terminated Mother's parental rights under section 2511(a)(1) and (b). These pertinent parts of the statute provide:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> \* \* \*

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(a)(1), (b).

We have interpreted section 2511(a)(1) as follows:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

***In re Z.S.W.***, 946 A.2d 726, 730 (Pa. Super. 2008).

- 5 -

Regarding the definition of "parental duties," this Court has stated the following:

[Our] Supreme Court has defined parental duty as follows:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.'

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

* * *

Although a parent is not required to perform the impossible, he must act affirmatively to maintain his relationship with his child, even in difficult circumstances. A parent has the duty to exert himself, to take and maintain a place of importance in the child's life.

Thus, a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment. A parent cannot protect his parental rights by merely stating that he does not wish to have his rights terminated.

*In re: B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (quotation marks and citations omitted).

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In the Matter of the Adoption of Charles E.D. M., II*, 708 A.2d 88, 91-92 (Pa. 1998).

Initially, we note that the argument section of Mother's brief provides pertinent citations to case law involving the termination of parental rights and an explanation of this Court's standard and scope of review. However, the entirety of Mother's argument consists of the following:

The Trial Court Transcript reflects that Mother's efforts to both see and parent her child were frustrated by the Aunt. (N.T. at 26 through 30). Furthermore, after losing her daughter to Children and Youth Services of Fayette County, the mother had righted her life and her conduct by passing drug tests, securing housing, maintaining her sobriety, obtaining a sponsor, and further raising a family of her own. (N.T. at 16 through 19 and 29).

Mother's brief at 11.

Pertinent to Mother's argument, the orphans' court explained the following:

After [Mother] was released from jail on March 5, 2013, she made minimal attempts to see [Child]. After June, 2013, the testimony is clear that she made no efforts whatsoever to see her daughter or to establish any maternal bond with her daughter. Therefore, not only for the six months immediately preceding the filing of the petition, but for the past several years, [Mother] has not maintained a parental bond with [Child]. Since [Child] was removed from the custody of [Mother] on October 3, 2011, [Mother] succumbed to drug addiction and offered no parental support or interest toward [Child]. [Mother] has not offered even the smallest token of love or support, directly or indirectly, to [Child], and her phone calls in June of 2013, do not display any intention to maintain or promote any significant role in the life of her child.

[Mother] asserts that she stopped making phone calls to see [Child] because her calls were not being returned, and she just kept leaving voicemails. However, this Court does not find that [Paternal Aunt and Uncle] have obstructed the potential for a relationship between [Mother] and [Child]. If [Mother] had a settled purpose of maintaining a relationship with [Child], she could have continued to make calls, or send letters, and she certainly could have sought legal advice in an effort to assert her parental rights. [Mother] has not made any efforts whatsoever since June, 2013, to preserve any relationship with [Child].

OCO at 5. Additionally, the court found credible the testimony provided by Paternal Aunt and Uncle, noting their "eagerness and sincerity" in regard to their desire to adopt Child. *Id.* at 6. Also, based upon the testimony of Child's guardian *ad litem*, the court found Child to be "doing well" in Paternal Aunt and Uncle's home and that Child's best interests would be "promoted by the proposed termination in preparation for adoption." *Id.*

Our review of the record (particularly, noting the testimony cited by Mother) reveals that the court's findings are supported by clear and convincing evidence. Moreover, we defer to the trial court's determinations

of credibility, despite what we deem to be a request by Mother to re-find facts and re-weigh evidence in her favor. We conclude that the court did not abuse its discretion nor err as a matter of law in its application of section 2511(a)(1) and (b). Accordingly, we affirm the court's order terminating Mother's parental rights to Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/2014